**UNITED STATES DISTRICT COURT**
**DISTRICT OF MASSACHUSETTS**
**BOSTON DIVISION**

| | |
|---|---|
| KYNDRYL, INC.,<br><br>Plaintiff,<br><br>v.<br><br>COMPUTER SCIENCES CORPORATION and DXC TECHNOLOGY COMPANY,<br><br>Defendants. | Civil Action No.: 1:25-cv-13943-FDS |

**STIPULATION AND AGREED ORDER FOR THE EXCHANGE AND PRODUCTION OF ELECTRONICALLY STORED INFORMATION**

**IT IS HEREBY STIPULATED AND AGREED**, by and between Kyndryl, Inc., Computer Sciences Corporation, and DXC Technology Company (each individually a "Party," and collectively the "Parties"), to comply with the procedures and obligations for the exchange and production of electronically stored information ("ESI") and other documents set forth below. If a provision of this agreement (the "ESI Stipulation") conflicts with the terms of the Stipulation and Order for the Production and Exchange of Confidential Information (the "Protective Order") entered in this action, the Protective Order will control absent further order of the Court. The Parties agree:

## 1. GENERAL PROVISIONS

(a) Applicability: This ESI Stipulation will govern all information produced, given, or exchanged by and among the Parties in the above-captioned action (the "Litigation").

(b) Agreement to Proceed in Good Faith: The Parties have met and conferred in accordance with Federal Rules of Civil Procedure 16 and 26 and Local Rule 16.1 and drafted this ESI Stipulation in an attempt to address common technical and other issues that arise during the

production of ESI. To the extent issues arise with respect to the production of ESI that are not addressed in this ESI Stipulation, the Parties agree to meet and confer in good faith in an attempt to resolve the issue without the need for Court intervention.

(c) Authenticity and Admissibility: Nothing in this ESI Stipulation shall be construed to affect the authenticity or admissibility of any ESI or any other documents of any kind produced in this Litigation. All objections to the authenticity or admissibility of any documents are preserved and may be asserted at any time.

(d) Encryption: To maximize the security of information in transit, any media on which documents are produced shall be encrypted or password protected by the Party that is producing, or has been asked to produce, documents ("Producing Party"). The Producing Party shall transmit the encryption key or password to the Party that has requested documents ("Requesting Party"), under separate cover, contemporaneously with sending the encrypted media.

**2. FORMAT OF FILES FOR PRODUCTION**

(a) Digitized Paper Documents:

(i) Documents originally in paper or physical form will be digitized into single-page, group IV (G4) format, black and white TIFF files at 300 dots per inch ("dpi").

(ii) Every filename will match the document's Bates number and be zero padded with no blank spaces; i.e., CSC000000001 (Computer Sciences Corporation's Bate Stamp Page 1), KD000820009 (Kyndryl's Bate Stamp Page 820,009).

(iii) The Parties will include with each production delivery an archival image link file (i.e., an Opticon (.OPT) file or similar).

(iv) The Parties will include standard Concordance default delimited text files in .DAT or similar format and will include the following fields: (i) BegBates; (ii) EndBates; (iii) BegAttach; (iv) EndAttach; and (v) AllCustodians.

(v) Unitizing of Documents. Paper documents should be logically unitized for production to the extent reasonably practicable. Where the documents were organized into groups, such as folders, clipped bundles, and binders, this structure shall be maintained and provided in the load file to the extent reasonably practicable and available.

(vi) The Parties will extract text from all documents where available and apply Optical Character Recognition ("OCR") software to all images of documents with no extracted text that contain readable characters. Text files shall be produced in .TXT format for each document; filenames for .TXT files will synchronize with/be identical to the filename for the corresponding TIFF file of the first page of the document (*see supra* ¶ 2(a)(i)).

(b) <u>Electronically Stored Information ("ESI")</u>:

(i) ESI shall be produced as single-page, black and white, TIFF Group IV, 300 DPI TIFF images. If an original document contains color and is an image-based file (e.g., .jpeg), then the document should be produced as single-page, 300 DPI JPG images with JPG compression and a high-quality setting as to not degrade the original image. To the extent that Excel files and other spreadsheets and other files that are not able to be imaged must be imaged to redact privileged information under the terms herein, they shall be processed in a manner that maintains and displays all hidden columns or rows, hidden text or worksheets, speaker notes, track changes, and comments. However, the Parties are under no obligation to enhance an image beyond how it was kept in the usual course of business.

(ii) ESI will be produced with corresponding .TXT files as outlined above in Paragraph 2(a), as well as extracted metadata fields (where available), as agreed and set forth in the Metadata Table contained in the Appendix below.

(iii) Microsoft Excel and other spreadsheet file types, including comma or tab delimited text files, Microsoft Access files, PowerPoint presentations, and audio and video files, shall be produced in native format. For each document or ESI required to be produced in native format, the Producing Party shall also provide a single-page Bates stamped image slip sheet stating the document has been "PRODUCED IN NATIVE FORMAT." Each native file should be named according to the Bates number it has been assigned and should be linked directly to its corresponding record in the load file using the NATIVELINK metadata field. Redacted PowerPoint files will be produced as TIFF images as described above in Paragraph 2(b)(i).

(iv) For ESI other than email and e-docs that do not conform to the metadata listed in the Metadata Table, such as text messages, chats, and instant messenger, etc., the Parties will meet and confer as to the appropriate metadata fields to be produced. Parties shall produce text messages, chats, and instant messenger conversations rolled up into a 24-hour time period to allow for understanding context of responsive messages, subject to any withholding or redactions for attorney-client or attorney work product privilege, personally identifiable information, or other legally protected information.

(v) To the extent a Receiving Party believes that any other documents or ESI should be produced in native format, it will identify such documents or ESI and the basis for the request, and the Producing Party will either produce the native files or explain why it refuses to produce the native files, and the Parties agree to meet and confer regarding such requests. To the extent that a document contains hidden content, tracked changes, comments, notes, or other similar

information, it shall be imaged so that such information is captured on the produced image file as it would appear in the native format of the document, subject to any withholding or redactions for attorney-client or attorney work product privilege, personally identifiable information, or other legally protected information.

(vi) Documents containing color need not be produced in color in the first instance. If good cause exists for the Requesting Party to request production of certain documents in color, the Requesting Party may request production of those documents in color. The Producing Party shall not unreasonably deny such requests.

(vii) Documents sent via links to internal, non-public, or public documents (e.g., Microsoft 365, SharePoint, Google Drive, etc.) that are contained within an email or chat shall not be extracted, collected, or produced as an attachment. If good cause exists for the Requesting Party to request production of certain documents sent via links, the Requesting Party may request production of those documents. The Producing Party shall not unreasonably deny such requests.

(viii) For redacted documents:

(1) OCR text files will be provided instead of extracted text files for any redacted images being produced. The OCR will not contain the redacted portions of the document.

(2) All redactions shall be clearly indicated on the face of the produced image.

(3) Redactions of native spreadsheets shall be completed using a native redaction tool. Notwithstanding the foregoing, spreadsheet files and presentation files requiring redactions may be rendered to an image and produced as a redacted TIFF image so long as reasonable efforts to redact these files in native form have been exhausted.

(4) Documents may be redacted for:

(a) Attorney-client or attorney work product privilege;

(b) Personally identifiable information the redaction of which is required by applicable law; or

(c) Information the disclosure of which is prohibited by applicable foreign data-protection law.

(5) A Producing Party that redacts a document on any ground other than privilege shall identify that document in the REDACTED metadata field and shall state the basis for the redaction by category. Redactions shall be limited to the protected information itself and shall not obscure otherwise responsive content.

**3. DEDUPLICATION (GLOBAL)**

To the extent reasonably possible and accounting for any technical limitations of any Party's ESI, each Party may remove entirely duplicative ESI prior to producing documents. Parties may deduplicate stand-alone documents or entire document families from ESI using hash value matching (such as MD5 or SHA-1 values). ESI that is not a 100% textual near duplicate match or hash value duplicate may not be removed, and partial email families may not be removed. For ESI, the Parties may deduplicate globally or across more than one custodian. If duplicates are excluded, the load file must include an AllCustodians metadata field that shows each custodian from whom a copy of the produced Document was collected. The Parties shall deduplicate stand-alone documents against stand-alone documents. Deduplication shall be performed at a family level and shall not break apart families. The producing Party may exclude from processing, review, and production files identified as known system, program, or application files through comparison against the current National Institute of Standards and Technology ("NIST"). Files removed through the de-NISTing process may include operating system files, application executables,

application libraries, installation files, and other non-user-created system files that are not reasonably likely to contain relevant information.

**4. EMAIL PROCESSING**

The Parties may use email thread suppression to avoid review and production of information contained within an existing email thread in another document being reviewed and produced, but under no circumstances will email thread suppression eliminate (a) the ability of a Requesting Party to identify every custodian who had a copy of a produced document or email, or (b) remove from a production any unique responsive branches and/or responsive attachments contained within an email thread.

**5. CUSTODIANS AND SEARCH TERMS**

The parties shall cooperate in good faith regarding agreement on search terms, custodians, and ESI sources. Nothing herein is intended to waive or affect any Party's ability to seek Court intervention if the Parties are unable to reach such an agreement within a reasonable time. Nothing herein is intended to prevent one or more Parties from using alternative search methods that do not involve the application of ESI search terms.

**6. PRIVILEGE LOGS**

(a) The Parties will produce Privilege Logs in accordance with Federal Rule 26(b).

(b) Privilege Logs will be provided in a searchable and sortable spreadsheet format.

(c) This ESI Stipulation is entered pursuant to Federal Rule of Evidence 502(d). The production of privileged or work-product materials, whether inadvertent or otherwise, does not constitute a waiver of any privilege or protection in this action or in any other federal or state proceeding, and Federal Rule of Evidence 502(b) does not apply to any such production. The

Parties shall respond to any such production in accordance with the Stipulation and Agreed Order for the Exchange and Production of Confidential Information entered in this case.

(d) Nothing herein is intended to prevent the Requesting Party from seeking information to assess the basis for withholding or redacting a given document reflected on a Privilege Log by, for example, via oral descriptions during a meet and confer with the Producing Party. Nothing herein is intended to waive or affect any Party's ability to seek Court intervention (in any such case, after complying with the meet and confer requirements under Local Rule 37.1) if the Parties are unable to reach agreement on the basis of such descriptions within a reasonable time or if a Party disagrees with the Producing Party's basis for withholding or redacting a given document.

**7. MISCELLANEOUS PROVISIONS**

(a) This ESI Stipulation may be re-executed and/or modified by agreement of the Parties; for instance, to allow non-signatory parties to this action or nonparties producing ESI to join this agreement.

(b) The Parties recognize that nonparties who receive document subpoenas in this Litigation, if any, may be unable, or may not agree, to follow each of the parameters of this ESI Stipulation. Therefore, nothing herein is intended to prevent any Party from reaching a different agreement with any nonparty concerning the production of ESI. The Parties agree that any ESI produced by a nonparty to one Party in response to a subpoena shall be produced by that Party to all other Parties, within 14 calendar days of receipt, in the same form (and with no alterations) as it was produced to the Party that issued the subpoena.

(c) Nothing in this ESI Stipulation shall be interpreted to require disclosure of information protected by the attorney-client privilege, work-product doctrine, or any other

applicable privilege or immunity. The Parties do not waive any objections as to the production, discoverability, admissibility or confidentiality of documents and ESI.

(d) By stipulating to the entry of this ESI Stipulation, no Producing Party waives any right it otherwise might have to object to disclosing or producing any information or item on any ground, including confidentiality. Similarly, no Producing Party waives any right to object on any ground to the authenticity, admissibility, or use in evidence of any material covered by this ESI Stipulation.

(e) Nothing in this ESI Stipulation alters a Party's legal obligation to retain data.

Dated: September 24, 2026

**SAVLA PLLC**

By: /s/ Sandeep Savla
Sandeep Savla (admitted *pro hac vice*)
Sean McMahon (admitted *pro hac vice*)
Michael Showalter (admitted *pro hac vice*)
110 East 59th Street, 22nd Floor
New York, New York 10022
Tel: (212) 461-2579
ssavla@savlalaw.com
smcmahon@savlalaw.com
mshowalter@savlalaw.com

**NORTON ROSE FULBRIGHT US LLP**
Andrew Skroback (BBO #567863)
1301 Avenue of the Americas
New York, New York 10019-6022
Tel: (212) 318-3000
andrew.skroback@nortonrosefulbright.com

**BAKER BOTTS L.L.P.**

By: /s/ Thomas E. O'Brien
Jamie R. Lynn (Bar No. 667350)
jamie.lynn@bakerbotts.com
700 K Street, NW
Washington, DC 20001
Telephone: (202) 639-7786
Thomas E. O'Brien (admitted *pro hac vice*)
tom.obrien@bakerbotts.com
Charles Strecker (admitted *pro hac vice*)
charles.strecker@bakerbotts.com
Shelby Saxon (admitted *pro hac vice*)
shelby.saxon@bakerbotts.com
2001 Ross Avenue, Suite 900
Dallas, Texas 75201
Telephone: (214) 953-6500

**So Ordered.**

____________________
F. Dennis Saylor IV
United States District Judge

Dated: ____________________

## Appendix – Metadata Table

| Metadata Table | | |
|---|---|---|
| **Field Name** | **Sample Data** | **Description** |
| BEGBATES | KD000000222 | First Bates number of native file document/email. The Parties agree to use 9-digit Bates numbers for uniformity. |
| ENDBATES | KD000000222 | Last Bates Number of native file document/email (single-page documents will list beginning and ending Bates number) |
| BEGATTACH | KD000000222 | Beginning Bates number of parent document. |
| ENDATTACH | KD000000229 | Ending Bates number of last attachment/child document |
| ALLCUSTODIANS | Adams, John; johnadams@1776.gov | Email inbox in which the file was located. |
| FROM | Adams, John | Email author/sender |
| TO | Hancock, John[mailto: HANCOCK@JOHNHANCOCK.com] | Recipient(s) of email separated by semicolon |
| CC | Franklin, Ben [mailto: bennyf@1776.com] | Carbon copy recipient(s) of email |
| BCC | NA | Blind carbon copy recipient(s) of email |
| SUBJECT | Declaration w/ edits | Email: subject line Native: document title |
| TITLE | Draft Declaration | Title field extracted from the Metadata of a non-Email Document |
| DATESENT | 7/3/1776 | Email: date the email was sent |
| TIMESENT | 12:59 AM | Email: time at which email was sent on date field |
| PARENTDATE | 01/01/2020 | The date of the parent email should be applied to the parent email and all of the email |

| | | |
|---|---|---|
| | | attachments to the extent reasonably practicable |
| PARENTTIME | 6:02 PM | The time of the parent email should be applied to the parent email and all of the email attachments to the extent reasonably practicable |
| DATERECEIVED | 01/01/2020 | Email: date the email was received |
| TIMERECEIVED | 6:02 PM | Email: time at which email was received on date in date field |
| AUTHOR | Jefferson, Thomas | Author of native document (MS Word, etc.) |
| DATECREATED | 6/1/2009 | Date native document was created |
| TIMECREATED | 7:32 AM | Time native document was created |
| DATEMOD | 10/12/2010 | Date native document was last modified |
| TIMEMOD | 5:30 PM | Last modification time |
| PGCOUNT | 1 | Total pages of each original document/email |
| TEXTLINK | D:\1969\ P000000222.txt | Path to text files of Extracted/OCR text, or re-OCRd text, if redacted |
| NATIVEPATH | \\Prod001\Natives\ABC0000001 .xls | Path to native file |
| MD5/SHA1 | E4d909c290d0fb1ca068ffaddf22 cbd0 | Hash code created for file in connection with deduplication |
| FILENAME | 1d0cbe9510845fbfbe23519a8 902d.mail | Filename of the original source ESI as stored by the custodian. |
| FILESIZE | 2 | File size in kilobytes (KB) |
| ATTACHCOUNT | 3 | Total number of attachments associated with the parent document. |
| REFERENCE CHAIN | <0e24be9ab2df4f40889b15a7b4 381a86@mail.com> | The Outlook message reference chain or conversation index (if applicable) |

| | | |
|---|---|---|
| Record Type | *E.g.*, Email; Attachment; eDoc; Hard Copy. | Type of record |
| IMPORTANCE | High Priority | Email importance flag |
| TIMEZONE | EST | Time zone of documents |
| CONFIDENTIALITY | Confidential | Confidentiality designation assigned to the document. |
| REDACTED | Yes | Identifies documents that were produced with redactions. |